**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S26A0779
The State
v.
Deanthony Cullins

On Appeal from the Superior Court of DeKalb County
No. 22CR24823

Decided: June 30, 2026

McMILLIAN, Justice.

The State appeals a plea in bar granted by the trial court to Deanthony Cullins. On appeal, the State argues that the trial court clearly erred in determining that the State intentionally provoked a mistrial in order to have a second chance to try the case. For the reasons that follow, we affirm.

1. In September 2022, Cullins was indicted for malice murder (count 1), felony murder (count 2), four counts of aggravated assault (counts 3 through 6), and four counts of possession of a firearm during the commission of a felony (counts 7 through 10). The indictment arose from an incident on June 12, 2022, in which Cullins was accused of shooting at a vehicle that had multiple people inside, including Dy'Sheae Hall, who was shot and killed. Cullins claimed that the shooting was in self-defense. In October 2023, the trial court set the case for trial on March 4, 2024. On February 27, 2024, five days before trial, the State filed a motion for a continuance because the State had just obtained deposition transcripts of three witnesses from a separate, but related, civil proceeding, totaling 566 pages. Cullins opposed the motion, and

the trial court denied the motion the next day. The State subsequently filed a motion to admit certain other acts evidence pursuant to OCGA § 24-4-404(b) ("Rule 404(b)").

On the first morning of trial, March 4, 2024, the court heard argument on the Rule 404(b) motion. Cullins objected to the motion because it was untimely, as the trial court had ordered that all pretrial motions "shall" be heard on February 13, 2024. The State acknowledged that the Rule 404(b) motion was filed untimely but argued that Cullins was not prejudiced by the late filing and that, in the alternative, the evidence was intrinsic. The trial court denied the motion without explanation and also found that the evidence could not be admitted as intrinsic.

During the trial, the State called Detective John Kearney as a witness on direct examination. During direct examination, the following colloquy transpired:

Q. So you made a decision to obtain warrants for Deanthony Cullins; correct?

A. Yes, sir.

Q. Did you also put out any sort of notification for his brother Dedrick?

A. Just wanted for questioning.

Q. Were you able to question or talk to Dedrick Cullins?

A. No, sir.

Q. What efforts did you make in order to obtain a statement from Dedrick Cullins or at least talk to him or see him?

2

A. I personally went out to his residence and there was no answer at his door. And then we had the look-out given to our officers if they came across him to let us know. Nobody found him. He also never presented himself.

Q. Does the DeKalb County Police Department have a website?

A. What do you mean?

Q. Is there a website for the DeKalb County Police Department?

A. Yes, sir.

Q. Does that website have contact information for the DeKalb County Police Department?

A. Yes, sir.

Q. Is the phone number for the police department listed on that website?

A. Yes, sir.

Q. Is the address for the DeKalb County Police Department written on that website?

A. Yes, sir.

Q. Were you ever able to speak with Deanthony Cullins?

A. No, sir.

Q. Why were you not able to speak with Deanthony Cullins?

A. I had been informed that he turned himself [in to]the jail with his lawyer. And because he had a lawyer, I wasn't going to try and talk to him.

Q. Did Mr. Cullins' lawyer ever reach out to you to make a statement?

A. No, sir.

At that point, defense counsel objected on the grounds that the question "asked the detective to comment upon the Defendant's silence" and therefore "[t]hat question was blatantly improper" and "is grounds for a mistrial." After requesting the mistrial, defense counsel also stated that he believed "it was purposefully done" and asked that this case not be retried following a mistrial. The prosecutor responded by acknowledging the question was improper, but asking for a curative instruction and explaining that "[i]t was not malicious" and that "I did not realize when I asked the question what I was placing at issue for the Defendant and I am now grasping the gravity of my error." After taking a recess, the trial court granted the mistrial.

The next morning, Cullins filed a "Plea in Bar/Plea of Former Jeopardy," and the trial court held a hearing at that time on the plea in bar. Cullins argued that the State goaded the defense into moving for a mistrial because although the State was well aware that Cullins had not made a statement to law enforcement, the State asked Detective Kearney whether Cullins had made a statement and why he was unable to speak to Cullins, leading to the answer that Cullins was in jail and had an attorney and that the attorney never reached out to have Cullins make a statement.

4

Cullins also argued that the mistrial was granted after two days of trial and after Cullins had impeached the State's witnesses and had "laid wide open [the defense] already in front of the jury" such that the State could "go back now and correct some of the things that were so beneficial to the defense in the first trial."

In response, the State admitted that the mistrial was properly granted, but the prosecutor argued that he did not realize that the question was improper at the time because he was attempting to "set up an argument on flight" under *State v. Orr*, 305 Ga. 729, 739–41 (2019) (holding that under the new Evidence Code, there was no categorical exclusion of defendant's silence and that a defendant's failure to come forward may be admissible under other theories such as circumstantial evidence of guilt based on flight). When the trial court questioned this rationale, asking how the question would establish flight given that "[Cullins] turned himself in," the prosecutor responded that "I now realize that I should not have asked that question, Judge. At the time I did not realize – I did not realize the impact of the question that I was asking." The State also argued that the State's case was going well and that the State had "certainly in no way, shape, or form intended to crater or mistry this case." The trial court continued the hearing on March 11, 2024, and orally ruled at that time that the plea in bar would be granted.

In April 2025, the trial court issued a written order memorializing its oral ruling. In the order, the trial court stated that "[b]ased on the totality of the evidence before this Court, this Court must find based upon the objective facts that the State's objective was to intentionally abort the trial to 'secure an opportunity to retry the case … or to otherwise obtain a more favorable chance for a guilty verdict on retrial.'" (quoting *State v. Taylor*, 281 Ga. 730, 736 (2007)). The trial court found the flight rationale

"nonsensical as the Defendant turned himself in shortly after finding out there was a warrant for his arrest, and the facts here are completely different from those in *Orr*." The trial court further noted that the case had been pending for a long time and that the prosecutor and Detective Kearney are "seasoned members of the legal system," and therefore "it is highly unlikely that the prosecutor didn't know prior to asking Kearney the questions [in the quoted colloquy] that he was violating one of the most basic rules of prosecutorial procedure.[ ] Or, that Detective Kearney didn't realize the same before his statement driven response." Further, the trial court "utterly disagree[d]" with the statement made by the prosecutor that the case was "going well." Based on how direct and cross examination went for multiple witnesses, the trial court found that "the State knew at the time Detective Kearny [sic] was being examined that if the case was retried it could 'clean up' Ms. Thomas' and Mr. Braddick's testimony." Finally, the prosecutor also "didn't argue or object to a mistrial (although did request a curative instruction)." This, in addition to the "numerous requests for delay, late filings, and witnesses' preparedness" showed that the State was not ready to try the case.

2. On appeal, the State does not contest that a mistrial was properly granted but argues that the trial court clearly erred in determining that the State intentionally elicited a mistrial to obtain a second chance to try the case. "When a mistrial is granted at the defendant's request due to prosecutorial misconduct, the general rule is that the Double Jeopardy Clause does not bar the State from retrying the case." *Roscoe v. State*, 286 Ga. 325, 326 (2009). See *Weems v. State*, 268 Ga. 142, 143 (1997). There is a narrow exception, however. After a mistrial, "a retrial may be barred where the misconduct was intended to goad the defendant into moving for a mistrial." *State v. Jackson*, 306 Ga. 626, 632 (2019). And

6

[w]hether the prosecutor intended to goad the defendant into moving for a mistrial is a question of fact that will not be overruled unless clearly erroneous. A trial court's findings will not be deemed to be clearly erroneous if there is any evidence to support them, and this holds true even if the findings are based upon circumstantial evidence and the reasonable inferences which flow from them.

Id. (cleaned up).

First, the State argues that the trial court failed to consider the delays caused by Cullins's conduct, focusing only on the State's fault in causing a delay in trying the case. However, any alleged delay in trying the case caused by Cullins does not have bearing on whether the prosecutor intentionally goaded the defendant into moving for a mistrial. As explained by the trial court, the State had asked for a continuance a few days before trial, which was denied, supporting the trial court's finding that the State was not ready to try the case.

Second, the State argues that the trial court was biased against the State in granting the plea in bar, as evidenced by the trial court leaving out a portion of the colloquy in its written order when quoting the examination that led to the mistrial. The State argued that by taking out a portion of the quotation, the trial court's recitation implied that the prosecutor intended to link Cullins's arrest to his failure to come forward and speak to law enforcement. However, we see no error in the trial court's order, as the trial court inserted an ellipsis to denote that certain parts of the examination were not being quoted, and the portion removed consists only of three questions and answers about Cullins's brother, which were not pertinent to whether the State improperly commented on Cullins's silence.

7

Third, the State posits that the prosecutor asked the objectionable questions because the prosecutor "was caught up in the adversarial process and was likely trying to counter trial counsel's use of prior statements by State's witnesses to suggest Appellee could shape any potential evidence at trial without having been subjected to police interviews." However, this after-the-fact rationale was not the reason given by the prosecutor at trial nor at the hearing on the plea in bar. Instead, the prosecutor said that he was trying to establish Cullins's flight as consciousness of guilt, which the trial court was authorized to disbelieve, especially since that theory did not fit with the facts of the case. Cf. *Crawford v. State*, 245 Ga. 89, 90–91 (1980) ("Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal."); *Woodruff v. State*, 233 Ga. 840, 844 (1975) ("[T]he trial court's decision on questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous."). Moreover, the trial court found that the prosecutor was a "seasoned" member of the profession and that "it is highly unlikely that the prosecutor didn't know prior to asking [Detective] Kearney the questions above that he was violating one of the most basic rules of prosecutorial procedure." This finding is supported by the record and therefore is not clearly erroneous. See *Jackson*, 306 Ga. at 632.

Fourth, the State argues that the trial court "ignored the most obvious reason why the prosecutor did not goad Appellee into a mistrial:" that "the fundamental nature of the testimony and evidence will not change during Appellee's second trial." However, the trial court concluded the opposite: that "a mistrial would allow the State to 'clean up' during the second trial, especially knowing the defense's strategy." As explained by the trial court, Cullins had impeached two witnesses to the shooting about

who possessed the gun and who shot first, and having observed Cullins's cross-examinations, the State could better prepare the witnesses at a second trial. And the State would have had another opportunity at a second trial to move to admit the Rule 404(b) evidence that had been previously excluded. As there is evidence in the record to support the finding that a second trial would allow the State to "clean up" its case, this finding also is not clearly erroneous. See *Jackson*, 306 Ga. at 632.

Finally, the State generally argues that the record does not support the trial court's findings. However, the State's arguments in this regard amount to a disagreement with the trial court's findings of fact and credibility determinations. We cannot say that the trial court's ultimate finding that the State intentionally goaded Cullins into moving for a mistrial in order to obtain a second chance to try the case was clearly erroneous because each of the trial court's underlying factual findings are supported by the record. The State therefore has failed to show that the trial court erred in granting the plea in bar. See *Jackson*, 306 Ga. at 632 (upholding plea in bar when the trial court "clearly found that the DA made the offending comments in hopes that they would result in a mistrial" "after realizing the evidence was not overwhelming" and "with specific and deliberate intent to subvert the protections afforded by the Double Jeopardy Clause by goading the defendant into moving for a mistrial"); *State v. Thomas*, 275 Ga. 167, 167–68 (2002) (affirming the trial court's finding that the prosecutor intentionally provoked a mistrial because "the prosecutor, who was a member of the bar for nine years and tried numerous felony cases,[ ] gave inconsistent, unconvincing explanations as to why he posed the question to the expert, the prosecutor did not seek curative instructions, or assert that the trial should continue; and the prosecutor stood to gain by aborting the trial because the expert's testimony was favorable to [the appellee]").

*Judgment affirmed. All the Justices concur.*